UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Billy McCoy | CASE NO. 2:23-cv-10252 |
| Plaintiff, | COMPLAINT FOR DAMAGES: |
| v. | 1. Violation of Fair Credit Reporting Act; |
| TransUnion, LLC, Iron Mountain Kingsford Community | |
| Defendants. | |

Elliot Gale (P85770)
Gale, Angelo, Johnson, & Pruett, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778
egale@gajplaw.com
Attorney for Plaintiff
Marlene Snyder

COMES NOW Plaintiff Billy McCoy (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

## **INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), and 15 U.S.C. §1681i(a)(5)(A)).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or

incomplete reporting of Plaintiff's account with Iron Mountain Kingsford Community (hereinafter "Iron Mountain").

3. Defendant Iron Mountain is reporting Plaintiff's account as delinquent with a past-due balance owed rather than listing the account as included and discharged in bankruptcy.

4. In addition, Iron Mountain failed to update the tradeline to include the bankruptcy notation.

5. Such reporting is wholly inaccurate, misleading, and adversely impacts Plaintiff's credit worthiness.

6. Plaintiff's credit score has been adversely impacted by the reporting; he has been unable to rebuild his credit score and obtain favorable interest rates as a result of the reporting.

7. Third parties have been exposed to the inaccurate tradelines.

8. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

## JURISDICTION & VENUE

9. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

10. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

11. The venue is proper pursuant to 28 U.S.C. §1391(b)(1).

12. Plaintiff is a consumer and a resident of the State of Wisconsin.  Plaintiff entered into the consumer transaction at issue in Michigan.

13.  Defendant TransUnion is a credit reporting agency that provides consumer information regarding consumers throughout the United States, including those located in Michigan.

14.  Defendant Iron Mountain is a credit union that engages in lending and financial transactions throughout the State of Michigan.

## GENERAL ALLEGATIONS

15.  Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for accurate credit reporting in an attempt to purposefully undermine Plaintiff's attempt to improve his FICO Score.

16.  In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

17.  FICO is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

18.  The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

19.  A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

20. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

21. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

22. There are 28 FICO Scores that are commonly used by lenders.

23. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

24. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.

25. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

26. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.

27. Each of the five factors is weighted differently by FICO.

28. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

29. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score.  Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

30. In factoring the severity of delinquent payments a FICO Score considers how late the payment continues to be, how much is owed, how recently they occurred, and how many delinquent accounts exist.

31. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

32. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

33. A consumer's FICO score is negatively impacted when an adverse authorized user account is reported.

**Metro 2**

34. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

35. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

36. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

37. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

38. The CDIA is *the* expert on accurate credit reporting. In support of his allegations Plaintiff avers the following:

    a. The CDIA offers a FCRA certificate program for all CRAs.

    b. The CDIA offers a FCRA awareness program for all CRAs.

c.  The CDIA offers a FCRA Certificate program for DFs.

d.  The CDIA offers a FCRA awareness program for DFs.

e.  The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

f.  The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

g.  The CDIA developed a credit reporting resource guide for accurately reporting credit.

39. The CDIA's Metro 2 is accepted by all CRAs.

40. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

41. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

42. The three main credit bureaus helped draft the CRRG.

43. The CRRG is not readily available to the public. It can be purchased online for $229.45.

44. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

45. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

46. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

47. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

### Consumer Information Indicator

48. When a consumer files for bankruptcy protection certain credit reporting industry standards exist.

49. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

50. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

51. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.

52. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

53. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.

54. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.

55. The CII Metro 2 Code "E" denotes that a Chapter 13 bankruptcy has been discharged.

56. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

57. Failure to update the CII to a "E" on discharged debts results in it appearing that a consumer, like Plaintiff, still owes on the account that was otherwise included and discharge in a bankruptcy.

58. The result lowers a consumer's credit score and makes a consumer appear much less credit worthy.

### Plaintiff's Bankruptcy

59. Plaintiff filed for chapter 7 bankruptcy protection on April 7, 2022.

60. Plaintiff received his chapter 7 discharge on July 12, 2022

61. Defendant Iron Mountain received notice of Plaintiff's bankruptcy filing and subsequent discharge.

### Plaintiff's Credit Report

62. After Plaintiff completed his bankruptcy and received his discharge Plaintiff ordered a credit report to confirm his creditors properly updated the accounts to reflect the bankruptcy discharge.

63. While most of his creditors updated the accounts to indicate the bankruptcy discharge, Plaintiff noticed a delinquent tradeline from Iron Mountain on his September 13, 2022 credit reports.

64. The Iron Mountain tradeline indicated that the account was open, past-due, and indicated that a balance of at least $4,000 was outstanding.

65. In response, Plaintiff disputed the Iron Mountain tradeline in September of 2022, indicating that the account should not be open with a balance and past-due balance because the account was included and discharged in bankruptcy.

66. Plaintiff believes that the disputed information was transmitted to Iron Mountain by the credit bureaus, which would prompt Iron Mountain to perform an investigation and respond to Plaintiff's dispute.

67. On November 22, 2022 Plaintiff ordered supplemental credit reports to verify that the Iron Mountain account was updated in response to his dispute.

68. However, the disputed Iron Mountain account was not updated and Iron Mountain continued to report to TransUnion that the account was open, past-due, and both a balance and past-due balance were outstanding.

**Inaccuracy – Iron Mountain**

69. Iron Mountain continues to report the account that was not discharged in bankruptcy and is past-due with an outstanding balance.

70. Such reporting makes it appear that Plaintiff is still obligated to make payments on the Iron Mountain debt and that the account was not included or discharged in bankruptcy.

71. Iron Mountain has not updated the CII to reflect that the account was ever subject to the terms of Plaintiff's chapter 7 filing nor subsequently discharged.

72. Rather than updated the CII to an "E" Iron Mountain continues to report to TransUnion the account has a balance and past-due balance owed.

73. It appears that Iron Mountain is still owed over $4,000 despite the debt being discharged.

74. Such reporting remains entirely inaccurate.

75. Such reporting also represents an attempt to collect, with those claims to be pursued in Plaintiff's chapter 7 bankruptcy case regarding violations of the automatic stay and discharge injunction.

**Willfulness**

76. Iron Mountain had actual knowledge of the bankruptcy but refused to update the CII.

77. Such reporting was not the result of accident but instead a deliberate attempt to undermine Plaintiff's ability to discharge debt and repair his credit.

78. Iron Mountain's reporting of the past-due balances, missed payments, and balance owed is an attempt to have Plaintiff make payments on the account in order to remove the derogatory and inaccurate account information.

**Damages**

9

79.  As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.

80.  In addition, Plaintiff's fresh start has been irreparably harmed and continues to be harmed by Iron Mountain's reporting as that reporting has been disclosed and disseminated to various third-party lenders.

81.  Until Iron Mountain's reporting has been properly updated Plaintiff continues to appear a severe credit risk.

82.  The actions of TransUnion and Iron Mountain as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

## **FIRST CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants)

**TransUnion – Failure to Assure Credit Reporting Accuracy.**

83.  Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

84.  TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

85.  Had TransUnion maintained reasonable procedures to assure maximum accuracy TransUnion would never have allowed Iron Mountain to report the account as described herein.

86.  As a result of TransUnion's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, denial of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

87. TransUnion allowed the inaccurate information reported by Iron Mountain to be transmitted to at various third-party lenders, further damaging Plaintiff's credit.

88. The violations described herein by TransUnion were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

89. Instead of correcting Iron Mountain's inaccurate reporting TransUnion allowed the inaccurate and misleading information to continue to be reported and disseminated to third parties.

**Willfulness**

90. The violations described herein by TransUnion were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

91. In 2012 the FTC reported that 1 in 5 consumer credit reports contains a material error.

92. Such a finding should shock the conscience.

93. When those errors are disputed TransUnion intentionally send consumer disputes to employees who do not live within the continental United States.

94. This is intentionally done to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.

95. Such a policy also inevitably leads to disputes going unresolved as these employees for Defendant TransUnion receive little to know training concerning how to accurately report consumer debt.

96. Instead, these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate.  *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols*., Inc., 84

F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols.*, No. CV 14-05276-AB (ASX)

97. TransUnion employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

98. TransUnion has intentionally setup this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

99. TransUnion also allowed Iron Mountain to report its accounts with inaccurate information despite specifically being told in the dispute letter why the information TransUnion was reporting was incorrect.

100. Despite the CRAs having actual knowledge of Plaintiff's account status, TransUnion, continues to allow Iron Mountain to report the account as past-due with an outstanding balance and with no bankruptcy notation.

101. Consequently, Defendant TransUnion is liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

102. In the alternative, TransUnion was at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

103. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendant Iron Mountain)

**Iron Mountain – Failure to Reinvestigate.**

104. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

105. 15 USC §§ 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

106. Defendant Iron Mountain violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

107. The CRAs provided notice to Iron Mountain that Plaintiff was disputing the inaccurate and misleading information, but Iron Mountain failed to conduct a reasonable investigation of the information.

108. Based on Plaintiff's dispute, Iron Mountain should have known its account was included in Plaintiff's Chapter 7 discharge.

109. The most basic investigation would include a simple review of well-established credit reporting industry standards.

110. Plaintiff alleges Iron Mountain did not review well established industry standards for credit reporting.

111. If Iron Mountain had reviewed such standards Iron Mountain would have seen its reporting was not in compliance and consequently inaccurate and or incomplete.

112. Such an investigation would be unreasonable.

113. Plaintiff also alleges that Iron Mountain did not investigate whether Plaintiff filed for bankruptcy and whether a discharge was entered.

114. The lack of investigation is unreasonable.

115. Plaintiff further alleges that Iron Mountain have not properly trained those directly investigating disputes on Metro 2 generally or credit reporting

industry standards and as such have developed reckless policies and procedures.

**TransUnion – Failure to Reinvestigate Disputed Information.**

116. Plaintiff re-alleges and incorporate herein the allegations in each and every paragraph above as though fully set forth herein.

117. After Plaintiff disputed the accounts mentioned above, TransUnion was required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.

118. TransUnion failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.

119. TransUnion could not have possibly done any type of reasonable investigation into this matter as Plaintiff explicitly explained that the Iron Mountain account should be reporting as included/discharged in bankruptcy rather than past-due with a balance owed.

120. Plaintiffs allege that TransUnion has its own independent duty to conduct a reasonable investigation 15 USC 1681i-(a)1.

121. TransUnion is not a passive entity bound to report whatever information a DF provides.

122. Given the aforementioned, Plaintiff alleges that TransUnion can and does suppress inaccurate information from being reported when DFs provide inaccurate information.

123. TransUnion can and does instruct DFs on how to properly report certain accounts from time to time upon request from the DF.

124. TransUnion failed to conduct a reasonable investigation because any basic investigation would have included a review of Plaintiff's dispute letters.

125. TransUnion intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that TransUnion's general policy is to simply parrot whatever information a data furnisher sends.

126. Such policy and procedure inherently leads to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants)

**TransUnion – Failure to Review and Consider All Relevant Information.**

127. Plaintiffs reallege and incorporate herein the allegations in each and every paragraph above as though fully set forth herein.

128. TransUnion violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

129. As a result of TransUnion's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

130. The violations by TransUnion were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

131. In the alternative TransUnion was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

132. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## <u>FOURTH CAUSE OF ACTION</u>
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A)
Against Defendants)

**TransUnion – Failure to Delete Disputed and Inaccurate Information.**

133. Plaintiff re-allege and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

134. TransUnion violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

135. As a result of TransUnion's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

136. The violations by TransUnion were willful, rendering it individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

137. In the alternative, TransUnion was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

138. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n

3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;

4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o;

5. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and

6. For determination by the Court that Defendants' policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Gale, Angelo, Johnson, & Pruett, P.C.

Dated: January 31, 2023

*/s/ Elliot Gale*
Elliot Gale
Attorney for Plaintiff